KELLY et al. v. UNION STOCKYARDS & TRANSIT CO. OF CHICAGO.

No. 10414.

United States Court of Appeals, Seventh Circuit.

Aug. 8, 1951.

Rehearing Denied Sept. 5, 1951.

Frank J. McAdams, Jr., William T. Kirby and Robert M. Yaffe, all of Chicago, Ill., for appellants.

Frank H. Towner, Harold A. Smith and Thomas S. Tyler, all of Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

This is an appeal from the denial of plaintiffs' motion for a preliminary injunction to restrain defendant from removing them from its "Open Order List" pending the determination of their action for damages and a permanent injunction. Plaintiffs are independent dealers in livestock, registered with the Secretary of Agriculture, who were, prior to March 16, 1951, engaged in trading in livestock at the Union Stock Yards in Chicago. Defendant, a posted stockyard subject to the provisions of the Packers and Stockyards Act, 42 Stat. 159, 7 U.S.C.A. § 181 et seq., renders for hire the services necessary in the successful operation of the Chicago Stock Yards, such as unloading, penning, feeding, watering, selling and weighing of livestock. These services are furnished by defendant on credit to dealers on the "Open Order List," from which plaintiffs were removed on March 16, 1951.

Defendant's removal of plaintiffs from its "Open Order List" was the culmination of an investigation begun in the summer of 1950, when defendant became suspicious of the accuracy of the weights being reported by its weighmasters. With the knowledge of the Department of Agriculture, machines which automatically recorded the weights of all animals weighed were secretly installed in all scales in defendant's stockyard. The weights recorded by these machines, together with the weight tickets prepared by the weighmasters, were turned each week to the Department of Agriculture, whose weekly reports, which were shown to officers of defendant by representatives of the Department, showed substantial overweights recorded by some of the weighmasters. This procedure was followed until early in December, 1950, when

representatives of the Department conducted an investigation at the Stock Yards, interrogating the weighmasters, many of whom confessed to accepting bribes to report false weights on animals weighed by them for certain dealers. These men were discharged by defendant and replaced by new weighmasters. With respect to the 57 dealers who had been implicated by the weighmasters and by the written confessions of two traders, the Department of Agriculture issued Orders of Inquiry, each one of which charged the dealer named therein with violating the Packers and Stockyards Act by bribing defendant's weighmasters to report false weights on animals bought or sold by such dealer.[1]

Subsequent to issuance of the Orders of Inquiry by the Department of Agriculture, but prior to hearings thereon, the chief of the Department's Packers and Stockyards Division wrote defendant a letter advising it of the issuance of the orders and stating further:

" * * * it has been customary for stockyards managements to extend the open order privilege only to those members of the trade operating at a market who are of unquestioned integrity and responsibility. In view of the seriousness of the formal charges which have been made against the dealers whose names appear on the enclosed list, we believe it is in order for your company to withdraw the privilege of the open order from these members of the trade until such time as disposition has been made of the formal proceedings pending against them * * *."

Defendant, on receipt of this letter, issued its oral order removing plaintiffs from the open order list. To restrain the execution of that order, this proceeding was instituted on March 16, 1951. The suit was originally filed by but one dealer, but many others, including the thirteen who prosecute this appeal, subsequently intervened and participated in the hearing in the District Court.

Plaintiffs' theory below was that defendant's maintenance of an "Open Order List" was "a practice" in rendering stockyard services within the meaning of the Packers and Stockyards Act and that their removal from the list was arbitrary, discriminatory, and in utter disregard of the procedure established by that statute. Defendant, insisting that its "Open Order List" operated only as a designation of those dealers to whom it would extend credit and that its extension of or refusal to extend credit were matters resting solely within its discretion, argued that neither the maintenance of the list nor the removal of names therefrom constituted a practice, as defined in the Act. The District Court, in denying plaintiffs' motion for a temporary injunction,[2] found that defendant's maintenance of an "Open Order List" and its elimination of plaintiffs therefrom constituted practices in rendering stockyards services and that plaintiffs' removal from the list had the effect of putting them out of business but concluded "that the defendant upon learning of falsification of the weights in the yards from the automatic recorders, on learning of the confessions made to the Superintendent, on being advised by the head of the Packers and Stockyards Division of the Department of Agriculture that most of the weighmasters and some of the dealers had confessed that money had been paid by the dealers to defendant's weighmasters to induce them to falsify the weights involving all of the plaintiffs and intervening plaintiffs, had the right and authority to remove plaintiff and intervening plaintiffs from the 'Open Order List'".

It is the position of plaintiffs that the District Court, having found that the maintenance of the "Open Order List" and plaintiffs' removal therefrom constituted practices in the rendering of stockyards services, erred in concluding that defendant had authority to remove them from the list and in denying their motion for a temporary injunction. They contend that,

---

[1] It is provided in the statute, 7 U.S.C. A. § 204, that the Secretary of Agriculture may suspend, for "a reasonable specified period", a registered dealer who, after due notice and hearing, is found by the Secretary to have violated any provision of the Act.

[2] Plaintiffs' action for damages and for a permanent injunction is still pending in the court below.

under Section 307 of the Act, 42 Stat. 165, 7 U.S.C.A. § 208, which prohibits unjust or discriminatory practices in furnishing stockyards services, defendant had no authority to put them out of business by removing them from its list, and that legally they can be put out of business or suspended only in the manner provided for in the statute, 7 U.S.C.A. § 204, which authorizes their suspension by the Secretary of Agriculture when, after due notice and hearing, he finds them guilty of a violation of the Act. The defendant, although still maintaining that plaintiffs' removal from the "Open Order List" was not a practice in rendering stockyard services within the meaning of the Act and was justified on the facts of record, argues, in the alternative, that if it was such a practice, the subject matter of the suit was within the exclusive primary jurisdiction of the Secretary of Agriculture and, consequently, absent a prior complaint to the Secretary and a hearing and decision thereon by him, outside the jurisdiction of the District Court. To this argument, plaintiffs reply that the primary jurisdiction doctrine does not and cannot bar granting injunctive relief which has as its aim the preservation of the status quo pending the decision of the Secretary of Agriculture.

█ Section 308 of the Act, 42 Stat. 165, 7 U.S.C.A. § 209, provides that any stockyard owner, market agency or dealer who violates the Act shall be liable in damages to the person or persons injured thereby, that "(b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 309, or (2) by suit in any district court of the United States of competent jurisdiction"; and, further, that "this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." These provisions would, on their face, seem to support plaintiffs' contention that the District Court did have jurisdiction. However, the same considerations which prompted the Supreme Court to promulgate the primary jurisdiction doctrine, Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 439–442, 27 S.Ct.

350, 51 L.Ed. 553, and to hold that, in cases arising under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., "Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission", Great Northern Ry. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943, serve with equal vigor to impel a similar conclusion in cases of a like nature arising under the Packers and Stockyards Act. The "close analogy" between the two statutes was pointed out by Chief Justice Taft in his opinion in Stafford v. Wallace, 258 U.S. 495, 522, 523, 42 S.Ct. 397, 66 L.Ed. 735, and stressed in even stronger language in Sullivan v. Union Stockyards Co., 8 Cir., 26 F.2d 60, 61, in which the court observed that "The Packers and Stockyards Act is patterned upon the Act to Regulate Commerce * * *." Certain it is that their marked similarities, especially in those provisions prescribing enforcement procedure, are more than coincidental. Both provide that liability for violations may be enforced either by complaint to the proper administrative tribunal or by suit in a district court of competent jurisdiction, 7 U.S.C.A. § 209(b); 49 U.S.C.A. § 9; both provide that their provisions shall not abridge or alter existing statutory or common law remedies but are in addition thereto, 7 U.S.C.A. § 209(b); 49 U.S.C.A. § 22. Yet the Supreme Court has interpreted these provisions in the Interstate Commerce Act to mean that "Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission." Great Northern Ry. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L. Ed. 943. Inasmuch as the need for uniformity in interpretation and administration which prompted the Supreme Court to announce the primary jurisdiction doctrine, Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, is just as evident in the case of the Packers and Stockyards Act as in the case of the Interstate Commerce Act, it seems clear that the doctrine must be held to be equally applicable to both.

Cf. Sullivan v. Union Stockyards Co., 8 Cir., 26 F.2d 60.

To say, however, that the primary jurisdiction doctrine is applicable to cases arising under the Packers and Stockyards Act is not to say that it applies to defeat the jurisdiction of the courts in all such cases, for the Supreme Court has clearly indicated that the doctrine is operative only in certain classes of cases, those in which "the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission." Great Northern Ry. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943. The decisive question, then, is whether this is such a case.

■ Plaintiffs' claim for relief is based on the postulate that defendant's maintenance of an "Open Order List" is a practice in rendering stockyards services, within the meaning of the Act, and that their removal therefrom is a discriminatory practice expressly prohibited by the Act. The questions thus presented are, it seems obvious, questions in which "the enquiry is essentially one of fact and discretion in technical matters" and, consequently, questions within the primary jurisdiction of the Secretary of Agriculture rather than that of the courts. That plaintiffs themselves regarded these questions as primarily factual rather than legal seems evident from their submission, and the District Court's adoption, of a finding of fact, as distinguished from a conclusion of law, to the effect that "The 'Open Order List' constituted a practice and a manner of rendering stockyards services to dealers at defendant's stockyards." And that they are technical questions, with respect to which uniformity in interpretation and administration is desirable and, indeed, essential, is, we think, obvious. Thus, it seems clear that the cause of action stated in the complaint was one which, under the statute, falling within the primary jurisdiction of the Secretary of Agriculture, was beyond the power of the District Court to hear and decide.

■ Plaintiffs, however, urge that, even if the court was without jurisdiction of their claims for damages and a permanent injunction, it did have jurisdiction to issue a temporary injunction to maintain the status quo pending the decision of the Secretary of Agriculture on the Orders of Inquiry issued against them. The fallacy in this argument lies in the fact that defendant is not a party to the administrative proceedings currently pending before the Secretary of Agriculture and that the outcome of those proceedings against the plaintiffs will not necessarily be determinative of the questions raised by their complaint against defendant. Thus, whether plaintiffs are or are not found guilty of violating the Act and are or are not suspended will not be determinative of the decisive questions as to whether defendant's maintenance of an "Open Order List" is a practice in the rendering of stockyards services within the contemplation of the Act and whether plaintiffs' removal therefrom constituted a discriminatory practice for which defendant is liable in damages. In view of this situation, the District Court's denial of plaintiffs' motion for a temporary injunction cannot be said to have been an abuse of discretion or otherwise erroneous. The judgment is affirmed.