**Thomas F. CARTER and Carter Electronics Corporation, Plaintiffs,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants.**

**Civ. A. No. 3-1294.**

United States District Court
N. D. Texas,
Dallas Division.

Feb. 8, 1966.

Charles Ryan, New York City, Wayne Babler and Melvin R. Quinlan, James M. Shatto, St. Louis, Mo., Edgar Mayfield, James Hand and H. W. Strasburger, Dallas, Tex., Vinson, Elkins, Weems & Searls, by Leroy Jeffers, Harry M. Reasoner, and Richard P. Keeton, Houston, Tex., for American Telephone and Telegraph Co. and Southwestern Bell Telephone Co.

Burford, Ryburn & Ford, by Frank M. Ryburn, Jr., Dallas, Tex., for the General Telephone Co. of the Southwest.

ESTES, Chief Judge.

Plaintiffs, Thomas F. Carter and Carter Electronics Corporation, claim that they manufacture and sell a device called the "Carterfone," which permits a person receiving an incoming telephone call to transmit such call from the location received to another location by the use of two-way radio communication. The party receiving the incoming telephone call places the telephone receiver handset on a cradle which forms part of the Carterfone; and by process of induction, "without any electrical connection," the two-way radio communication system is activated, and the telephone caller can communicate with another person who may be located several miles away from the telephone receiver. Plaintiffs assert that defendants, American Telephone and Telegraph Company, Southwestern Bell Telephone Company and The General Telephone Company of the Southwest, using their monopoly powers over telephone communications, have conspired to and did prevent plaintiffs from selling their device by threats to prospective customers that their telephone service would be discontinued if they used plaintiffs' device, thereby substantially lessening competition between the Carterfone and defendants' mobile radio-telephone units and tending to create and further maintain defendants' monopoly over such products, all in violation of the antitrust laws, 15 U.S.C. §§ 1, 2, and 14, for which plaintiffs seek treble damages and injunctive relief.

Portions of AT&T Tariff FCC No. 132, "Message Toll Telephone Service,"

Geary, Brice & Lewis, by Ray Besing, and William VanDercreek, Dallas, Tex., for plaintiffs.

are attached as Exhibit "A" to plaintiffs' Complaint. Section 7 of the Tariff gives the Telephone Company the right to suspend or terminate service if an unauthorized device is "attached to or connected with the facilities furnished by the Telephone Company, whether physically, by induction or otherwise, except as provided in this Tariff."

Section 24 authorizes miscellaneous devices provided by the telephone customer "provided any such device so used would not endanger the safety of Telephone Company employees or the public; damage, require change in or alteration of, or involve direct electrical connection to, the equipment or other facilities of the Telephone Company; or interfere with the proper functioning of such equipment or facilities; or impair the operation of the telephone system or otherwise injure the public in its use of the Telephone Company's services."

In their complaint plaintiffs state that:

"* * * Although the Plaintiffs deny that such tariff is a valid tariff and that such tariff is applicable to the Carterfone, regardless of its validity and its application, the Defendants and the aforementioned non-party telephone companies have, as part of a common design and scheme, in uniformly publishing and enforcing such tariff, wrongfully used such tariff to accomplish a violation of the antitrust laws of the United States * * *."

The defendants have filed motions to dismiss on the grounds that primary jurisdiction lies with the Federal Communications Commission and that the complaint fails to state a claim upon which relief can be granted.

■ The Communications Act (47 U.S.C. § 151 et seq.) was enacted for the stated purpose of regulating interstate commerce in communication by wire and radio so as to make available "a rapid, efficient, Nation-wide and world-wide" communication service with adequate facilities at reasonable charges and created the Federal Communications Commission to execute and enforce the provisions of the Act. The Commission's authority and responsibility encompass "charges, practices, classifications, and regulations for and in connection with such communication service" which must be just and reasonable [47 U.S.C. § 201(b)]; the common carrier may not make any unjust or unreasonable discrimination in charges or practices directly or indirectly by any means or devices [47 U.S.C. § 202(a)]; no change may be made in such charges, classifications, regulations or practices except after thirty days' notice to the Commission and to the public [47 U.S.C. § 203(b)]; telephone companies may not participate in communication unless schedules have been filed and published in accordance with the provisions of the Act [47 U.S.C. § 203(c)]; whenever a new charge, classification, regulation or practice is filed with the Commission, the Commission may, upon complaint or upon its own initiative, "enter upon a hearing concerning the lawfulness thereof" (47 U.S.C. § 204) and prescribe the just and reasonable charges or practices (47 U.S.C. § 205); "[a]ny person * * * complaining of anything done or omitted to be done by any common carrier * * * may apply to said Commission [and] * * * [i]f * * * there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper" (47 U.S.C. § 208); and the Commission has the power to require any telephone company "to provide itself with adequate facilities for the expeditious and efficient performance of its service as a common carrier" [47 U.S.C. § 214(d)]. The Federal Communications Commission administers a "pervasive regulatory scheme" for telephone companies. When the antitrust policy of free competition is placed beside so pervasive a regulatory scheme involving rates and practices of those providing telephone service to the public, some resolution is obviously necessary.

The regulatory agency which is expert in, and responsible for, administering the controls should be given the opportunity to determine all questions within its special competence

"as an aid to the courts in resolving federal antitrust policy and federal regulatory patterns into a cohesive whole. * * * Accordingly, this Court consistently held that when rates and practices relating thereto were challenged under the antitrust laws, the agencies had primary jurisdiction to consider the reasonableness of such rates and practices in the light of the many relevant factors including alleged antitrust violations, for otherwise sporadic action by federal courts would disrupt an agency's delicate regulatory scheme, and would throw existing rate structures out of balance." United States v. Radio Corp. of A, 358 U.S. 334, 348, 79 S.Ct. 457, 466, 3 L.Ed.2d 354.

In an unusually careful and comprehensive opinion applying the doctrine of primary jurisdiction, the Eighth Circuit has held in McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659 (1962), a private antitrust action against the stockyards company for treble damages, that the Court should refuse to assume jurisdiction as to an issue subject to the Secretary of Agriculture's power of regulation under the Packers and Stockyards Act, 7 U.S.C.A. §§ 201–203 and 205–217a, but held that the Court should retain jurisdiction pending proceedings before the Secretary. Provisions of the Packers and Stockyards Act requiring exercise of primary jurisdiction by the Secretary of Agriculture are analogous to those in the Communications Act.

McCleneghan, 298 F.2d 659, 665, 666, contains the following Supreme Court pronouncements regarding primary jurisdiction of administrative bodies:

" 'Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Com-

mission. * * * It is required because the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. * * * ' " Great Northern R. Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943;

\* \* \* \* \* \*

" 'The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. * * * "Primary jurisdiction" * * * comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. * * * ' " United States v. Western Pac. R. Co., 1956, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126; and

\* \* \* \* \* \*

" ' * * * [A]gencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. * * * ' " Far East Conference v. United States (an antitrust case), 1952, 342 U.S. 570, 574–575, 72 S.Ct. 492, 494, 96 L.Ed. 576.

Questions with respect to the "value and quality of telephone service" resulting from interconnections as well as whether the tariff provisions were reasonable and in the public interest [Peters Sunset Beach v. Northwestern Bell Tel. Co., 60 PUR 3d 363, 370 (Minn.R.R. and Warehouse Comm'n., 1965)] and whether

there is any deterioration in the efficiency of service because of the interconnections [City of Los Angeles v. Southern California Telephone Company, 2 PUR (N.S.) 247 (California R.R. Commission, 1933)] have been resolved in proceedings initiated before administrative bodies.

■ Determinations that regulatory tariffs are just, reasonable and valid permeate every aspect of telephone communications regulation. The sections of the AT&T Tariff quoted above leave no doubt that the validity, application and effect of this tariff involve technical and complex matters within the special competence and "expertise" of the Federal Communications Commission. The revenues the telephone companies receive from mobile radio-telephone communication services, which plaintiffs say compete with their device, may be considered in setting rates for the Telephone Company. Thus, any action by this Court bypassing the FCC might disrupt that agency's delicate regulatory scheme and throw existing rate structures out of balance.

The antitrust laws and the precise ingredients of this case are among the relevant factors for FCC consideration in determining the justness, reasonableness, validity, application and effect of the tariff and practices here involved. McCleneghaN v. Union Stock Yards Co. of Omaha, supra. "[R]esort to the courts is still open after the agency has acted, [and] the doctrine [of primary jurisdiction] applies even if the agency has no jurisdiction to grant the relief sought." 3 Davis, Administrative Law Treatise, 1958, § 19.07. Accordingly, the defendants' Motion to Dismiss should be and is denied.

■ The Court is of the opinion, however, that primary jurisdiction in a case of this kind to resolve all questions relating to the justness, reasonableness, validity and effect of the tariff and practices complained of is vested in the Federal Communications Commission, the agency charged with maintenance of a pervasive regulatory system over the telephone industry, and that all proceedings herein should be stayed and held in abeyance * pending the conclusion of appropriate administrative proceedings initiated before the Federal Communications Commission; and that jurisdiction remains in the Court to pass ultimately upon the antitrust issues.

It is so ordered.

---

* Louisville & Nashville Railroad Co. v. Knox Homes Corp., 343 F.2d 887 (5 Cir., 1965); McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659 (8 Cir., 1962).