Morris CRAIN, Plaintiff-Appellant,

v.

BLUE GRASS STOCKYARDS COMPANY and Clay-Wachs Stockyards, Inc., Defendants-Appellees.

No. 17998.

United States Court of Appeals Sixth Circuit.

Aug. 22, 1968.

James R. Odell, Lexington, Ky., for plaintiff-appellant; Pat D. Rankin, Stanford, Ky., on brief.

Gladney Harville, Lexington, Ky., for defendants-appellees; Stoll, Keenon & Park, Herbert D. Sledd and Brown, Sledd & McCann, Lexington, Ky., on brief.

Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

This appeal is from an order of the District Court granting the defendants' motions to dismiss the complaint on the ground that the controversy was within the primary jurisdiction of the Secretary of Agriculture.

Plaintiff's action in the District Court was for damages and injunctive relief

alleging violations by defendants of sections 1 and 2 of the Sherman Act, section 15 of the Clayton Act and of various provisions of the Packers and Stockyards Act of 1921, 15 U.S.C. §§ 1, 2 and 15, and 7 U.S.C. § 181 et seq., respectively.

The complaint alleged substantially the following: That plaintiff is a livestock dealer licensed and bonded under the provisions of the Packers and Stockyards Act of 1921; that he has in the past, and does now, buy, sell and transport livestock in behalf of others and on his own account; that the defendants-stockyards are subject to the provisions of said Act and are the only stockyards in Lexington, Kentucky; that they account for a substantial amount of the livestock traded in central Kentucky; that for several years plaintiff utilized the defendants' facilities in connection with receiving, buying and selling livestock in commerce, but on and since September 15, 1965, the defendants have refused, without just cause, to permit plaintiff to use the facilities and services of their stockyards. Such conduct of the defendants was alleged to be in combination and conspiracy with each other, for the purpose of excluding plaintiff from the Lexington market thereby attempting to monopolize the market and restrain trade. Plaintiff further alleged that the defendants' actions were a violation of their duty to provide reasonable stockyard services without discrimination. As a result of the above conduct plaintiff alleged that he has suffered substantial monetary loss.

Answers were filed by the defendants asserting lack of jurisdiction of the Court over the subject matter and further alleging that they had the lawful obligation to and did establish and enforce reasonable rules and regulations for the orderly and successful operation of their stockyards; that plaintiff wilfully refused to comply with such rules and regulations although repeatedly requested to do so; that such refusal was the sole reason for the denial to him of the services and facilities of the stockyards.

Defendants filed motions to dismiss which the District Judge granted on the sole ground that primary jurisdiction for the determination of the controversy lies with the Secretary of Agriculture. This appeal followed.

The relevant provisions of the Packers and Stockyards Act of 1921 are sections 205, 208 and 209. Section 205 provides in part:

"It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard: * * *."

Section 208 provides in part:

"It shall be the duty of every stockyard owner * * * to establish, observe and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, * * *."

Section 209 provides:

"(a) If any stockyard owner, * * violates any of the provisions of sections 205–207 or 208 of this title, * * * he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation."

"(b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) by suit in any district court of the United States of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Plaintiff's claims for antitrust and stockyard Act violations are based on statutory remedies and hence come within the purview of section 209(b) (2). However, despite the choice of remedies provided by section 209(b) (2), there are instances in which the courts, because of the nature of the

questions involved, will require that the litigants first seek relief before the Secretary. This has become known in the case law as the doctrine of primary jurisdiction.

■ The doctrine of primary jurisdiction traces its origin to Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907) [1]. There the oil company sued for the return of transportation charges paid to the defendant-carrier which were alleged to be discriminatory and in excess of a reasonable rate. The court prefaced its opinion by recognizing that the action was one which could have been maintained at common law. The court also recognized that the Act (Interstate Commerce Act) purported to provide remedies in addition to pre-existing ones. However, the court also noted that one of the primary purposes of the Act was to establish uniform rates which would not discriminate between shippers, and since to permit a court to pass on the reasonableness of a rate prior to action by the Commission might destroy the very uniformity the Act sought to achieve, the court held that where a rate is attacked as unreasonable the first resort must be to the administrative agency rather than the courts.

The doctrine was elaborated upon and somewhat expanded in the subsequent case of Great Northern Ry. v. Merchants Elev. Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922). That case involved an action by a shipper to recover reconsignment charges which it had paid the defendant-carrier. Resolution of the matter hinged on the interpretation to be given a tariff, i.e., whether the facts came within the rule of the tariff or within one of the exceptions. The court held that where the facts are largely undisputed and the only question

presented is one of construction of a tariff, that is a question of law and may be decided by the courts without prior referral to the administrative agency. In explaining why a question of the reasonableness of a rate, rule or practice must first be referred to the Commission, in contradistinction to construction of a tariff, the court said, at page 291, 42 S.Ct. at page 479:

"It [referral] is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable, and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute."

The court further held that where words of a tariff are alleged to have other than their ordinary meaning a factual determination by the Commission must precede the court's interpretation. In accord with this holding are Texas & Pac. Ry. v. American Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255 (1914) (the question of whether the word "lumber" as used in a carrier's tariff included oak railroad crossties required referral to the Commission) and Loomis v. Lehigh Valley R.R., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517 (1916) (where a shipper required specialized equipment to protect his goods in transit; the carrier refused to provide other

1. Most of the cases dealing with the question of primary jurisdiction arose under the Interstate Commerce Act. However, earlier cases recognized the close analogy between that Act and the Packers and Stockyards Act. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735 (1922); McCleneghan v. Union Stock Yards Co., 298 F.2d 659 (8th Cir. 1962) and Kelly v. Union Stockyards & Transit Co., 190 F.2d 860 (7th Cir. 1951) and hence we find no difficulty in applying the case law developed under that Act to the present case.

than ordinary equipment and the tariff was silent as to what the carrier was obliged to furnish, the controversy must first be considered by the Commission in order to ascertain what equipment was reasonable under the tariff).

A more recent decision dealing with primary jurisdiction is United States v. Western Pac. R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). There the government had shipped some napalm gel bombs which were not equipped with a burster and fuse. There was at the time a tariff in force which provided for a certain rate for "incendiary bombs". In addition to claiming that the absence of the burster and fuse prevented the shells from being "incendiary bombs", the government contended that if the tariff was intended to apply to these shipments it was unreasonable. The court said, at pages 63–64, 77 S.Ct. at page 165:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction', on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." [Citations omitted.]

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."

The relevant case law dealing with primary jurisdiction may be summarized as follows: In most instances where rates, rules or practices are attacked as unreasonable or discriminatory the appropriate administrative agency should decide the question initially. See e.g. Mitchell Coal & Coke Co. v. Pennsylvania R.R., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472 (1913) (reasonableness of carrier's practice of paying certain shippers large rebates allegedly for their services in hauling freight cars from their mine sites to the stations); Northern Pac. Ry. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221 (1918) (practice of a carrier in shipping freight submitted without specified shipping instructions by route which was longer and more expensive than alternative available route); Baltimore & Ohio R.R. v. United States of America ex rel. Pitcairn Coal Co., 215 U.S. 481, 30 S.Ct. 164, 54 L.Ed. 292 (1910) (reasonableness of carrier's regulations governing assignment of freight cars during car shortage); Kelly v. Union Stockyards & Transit Co., 190 F.2d 860 (7th Cir. 1951) (action of stockyards which had the effect of denying credit to the plaintiffs); Carter v. American Tel. & Tel. Co., 250 F.Supp. 188 (N.D.Tex.), affirmed, 365 F.2d 486 (5th Cir.1966), cert. denied, 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (where plaintiff claimed that defendant's tariff was both invalid and was being applied in a discriminatory manner). Referral is also required where the facts call for the deciding tribunal to exercise a degree of discretion. Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S. Ct. 151, 65 L.Ed. 372 (1921) (where the Director General of Railroads issued an order which had the effect of placing silk among the group of items not accepted by the railroads for shipment) and Morrisdale Coal Co. v. Pennsylvania R.R., 230 U.S. 304, 33 S.Ct. 938, 57 L.

Ed. 1494 (1913) (regulation of railroad assigning freight cars on the basis of mine capacity). While in most instances courts will retain jurisdiction of a controversy which calls merely for the construction of a tariff, they will decline to do so where it appears that words of the tariff are used in other than their ordinary way. Great Northern Ry. v. Merchants Elev. Co., supra; Texas & Pac. Ry. v. American Tie & Timber Co., supra; United States v. Great Northern Ry., 337 F.2d 243 (8th Cir.1964). A study of the cases discloses that ordinarily where there is a factual dispute the courts will require prior consideration by the appropriate administrative agency. The reasons for this policy are set out in Great Northern Ry. v. Merchants Elev. Co., supra, where the court pointed out, 259 U.S. at page 291, 42 S.Ct. at page 479: 1.) the inquiry is often one of discretion in technical matters, 2.) this is the best method for obtaining uniformity, 3.) the evidence is often extensive and conflicting and 4.) often in order to fully appreciate this evidence a prior knowledge of intricate facts of the relevant field is necessary and " * * * such acquaintance is commonly to be found only in a body of experts." There are, however, instances in which it is appropriate for the court to resolve factual disputes. See e.g. Pennsylvania R.R. v. International Coal Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446 (1913) (practice of railroad of granting certain shippers rebates and allowances was illegal on its face and required the court only to ascertain if the violation had in fact occurred). See also Pennsylvania R.R. v. Puritan Coal Mining Co., 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867 (1915), where after stating that in those cases when the reasonableness of a carrier's rule is questioned the issue is initially for the Commission, the court said at pages 131–132, 35 S.Ct. at page 488:

> "But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative

question involved, the courts being called on to decide a mere question of fact as to whether the carrier violated the rule to plaintiff's damage."

In accord is Illinois Cent. R.R. v. Mulberry Coal Co., 238 U.S. 275, 35 S.Ct. 760, 59 L.Ed. 1306 (1915) where the question presented was whether the carrier had breached its own admittedly reasonable car distribution rule. The rule appears to be that courts will decide these questions initially except where the case raise " * * * issues of fact not within the conventional experience of judges * * *." Far East Conf. v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

■ The gist of the plaintiff's claim is that he was excluded from the defendants' facilities and services without just and reasonable cause. The answers admit the fact of exclusion but plead that it was justified on the ground that plaintiff wilfully violated reasonable rules and regulations adopted by the defendants for the orderly and successful operation of their stockyards. The District Judge held that these adverse contentions raised a question of fact and that therefore the issue must be referred to the Secretary. We are unable to agree with the conclusion of the District Judge that every factual dispute requires referral to the administrative agency. Our prior discussion makes it clear that there are factual questions which are appropriate for decision by the courts.

The District Judge relied on McCleneghan v. Union Stock Yards Co., 298 F.2d 659 (8th Cir.1962), which, like our case, involved violations of the antitrust laws and the Packers and Stockyards Act of 1921. The Court there considered two discriminatory acts. The first one was the "flip system" in which only members of the "Traders" Exchange were permitted to flip coins to determine the priority of bidding on cattle. The Court held that the discrimination involved in such a system had already been found to be a violation of the Act

by both the Secretary and the courts and there was no need to refer that matter to him.

The other act concerned cancellation of the pens which the Court held was a matter for the Secretary's expertise and should be properly assessed by him in the first instance. The Court cited as authority Sioux City Stockyards Co. v. United States, 49 F.Supp. 801 (N.D. Iowa 1943).

■ The well-pleaded allegations of the complaint in the present case sufficiently set forth claims for violation of the antitrust laws as well as of the Packers and Stockyards Act of 1921 upon which relief can be granted. The plaintiff ought not to be deprived of his right to resort to the courts as authorized by Section 209(b) of the Act, unless it clearly appears that the controversy is one that properly should be referred to the Secretary for determination.

In our judgment, the record in this case is not sufficiently clear to establish that the case falls within the primary jurisdiction of the Secretary.

It is necessary that there be an examination of the rules and regulations claimed to have been established by defendants in order to determine this question. The answer of defendants did not set forth what the rules and regulations were or the particulars in which plaintiff violated them. Yet defendants averred in their answers that they barred plaintiff from the facilities and services of the stockyards for the sole reason that he refused to comply with the unspecified rules and regulations.

■ Since no responsive pleading by plaintiff to the defendants' answers was required or permitted, the averments in said answers are "taken as denied or avoided", Rule 8(d) Fed.R.Civ.P. No

affidavits or other evidence were submitted by defendants to prove either the adoption of rules and regulations by them or any violation thereof by plaintiff and no finding was made on the subject by the District Court.

■ Upon remand, the District Court will consider the rules and regulations adopted by defendants and determine whether questions are presented which require referral to the Secretary or may be appropriately decided by the Court. In our judgment, it does not require administrative expertise to determine whether plaintiff violated rules and regulations and whether, because of such violation, defendants had the right to and did exclude plaintiff from the facilities and services of the stockyards, Pennsylvania R.R. v. Puritan Coal Co., supra. If this is decided in the affirmative, it would operate as a determination of plaintiff's claim for antitrust violation.

On the other hand, if plaintiff was not excluded because of violation of defendants' rules and regulations, he should have his day in court on his claim for damages and injunctive relief.

■ Questions as to the reasonableness of a rule or regulation should be referred to the Secretary unless he has already decided a similar question or unless the rule or regulation is arbitrary and unreasonable on its face, Pennsylvania R.R. v. International Coal Mining Co., supra.

■ In the event that the District Court decides that the controversy is one for initial determination by the Secretary, jurisdiction should nevertheless be retained pending the disposition thereof.

The judgment of the District Court is vacated and the cause is remanded for further proceedings consistent with this opinion.