**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Joey HAUN, Defendant–Appellee.**

**No. 96–5505.**

United States Court of Appeals, Sixth Circuit.

Argued and Submitted May 1, 1997.

Decided Aug. 26, 1997.

future benefits of $122,544.44.

Barbara C. Biddle, Edward Himmelfarb (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Plaintiff–Appellant.

Elizabeth E. Agar (briefed), Croswell & Adams, Cincinnati, OH, Danny Hryhorchuk (briefed), Morristown, TN, for Defendant–Appellee.

Before: WELLFORD, MOORE, and COLE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

The government filed a civil action in the United States District Court for the Eastern District of Tennessee against Joey Haun under the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181–229 (the Act), to collect a civil penalty and to enjoin Haun from carrying on the business of a livestock dealer without having registered with the Secretary of Agriculture and filed the requisite bond. The district court declined to accept jurisdiction over the case, declaring that the action was "better handled administratively." As we read the plain language of the controlling statute, § 303 of the Act (7 U.S.C. § 203), a civil action in a United States district court is the appropriate and exclusive avenue for recovery of the prescribed penalty. Because referral of such an action to the Secretary would be improper, and because we see no other basis for the district court in this case to have declined to exercise jurisdiction, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

Joey Haun is a Tennessee farmer who admits to making incidental purchases and sales of livestock and to transporting livestock to and from markets for his friends and neighbors. Joint Appendix (J.A.) at 11–12 (Answer ¶ 3). The government alleges that, from July 3, 1993 through October 13, 1993, Haun bought and sold livestock as a dealer without registering with the Secretary of Agriculture and without furnishing a bond as required by the Packers and Stockyards Act. J.A. at 6 (Compl.¶ 5).

In the fall of 1992, the government sent a letter to Haun requesting that he comply with the Act, enclosing an application for registration and a bond form. Haun did not respond. The government then sent a certified letter, which was later returned unclaimed, explaining the penalties for violations of the Act and again requesting that Haun comply. In the summer of 1993, the government hand-delivered another letter to Haun's mother at Haun's residence, but

Haun did not respond. J.A. at 6–7 (Compl. ¶¶ 5–8).

Believing that Haun had violated the Act, the government filed a complaint in United States district court requesting a civil penalty pursuant to 7 U.S.C. § 203 in the amount of $2,575 ($500 for the first day of violation plus $25 per day for violations thereafter), and a permanent injunction pursuant to 7 U.S.C. §§ 204 and 216 prohibiting Haun from engaging in activities covered under the Act without first registering and furnishing a bond. J.A. at 7–8.

On the eve of trial, the district court ordered the government to show cause why the case should not be dismissed for lack of jurisdiction, explaining that in the court's view the matter "should have been brought before a Judicial Officer of the United States Department of Agriculture, rather than in a district court." J.A. at 13–14 (citing 7 C.F.R. pt. 1, subpt. H, § 1.131). In response, the government argued that the cited regulation does not encompass § 303 of the Act (7 U.S.C. § 203),[1] and that a suit in a district court is the only way to recover a civil penalty under § 303. The government provided the court with citations to other actions that had been brought in federal district courts pursuant to § 303.[2] Notwithstanding the government's assertions, the district court subsequently declined to accept jurisdiction over the matter and dismissed the case, declaring:

> It does appear that some of these cases have been initiated in federal courts. . . .
> However, the vast majority of cases under Section 303 of the Packers and Stockyards Act [7 U.S.C. § 203] are reported in the Decisions of the United States Department of Agriculture. In the Court's judgment, even if it is appropriate to bring these

cases to district court, they are better handled administratively.

J.A. at 16.

Before us, the government protests that a civil penalty under § 303 of the Act cannot be assessed administratively; thus, the district court's order leaves the Department of Agriculture in a state of "legal limbo" with respect to penalizing Haun, or others like him, for operating as a livestock dealer without first registering. The question we must decide is whether the district court erred in declining to exercise jurisdiction.

## II. DISCUSSION

### A. Appellate Jurisdiction and Standard of Review

We have jurisdiction to review the district court's order dismissing the complaint pursuant to 28 U.S.C. § 1291. *See In re Long Distance Telecommunications Litigation,* 831 F.2d 627, 632 (6th Cir.1987) (addressing propriety of district court's dismissal of claims within the primary jurisdiction of the FCC).

The parties disagree, however, as to the standard we should apply in reviewing the district court's peculiar dismissal: the government calls for de novo review because the case involves purely legal issues; Haun contends that a court's decision to defer jurisdiction pending administrative proceedings is reviewed for abuse of discretion. In our view, this case presents a question of statutory interpretation, ascertaining whether a provision of the Packers and Stockyards Act confers district court jurisdiction exclusive of the agency; accordingly, our review is de novo. *See Holmes Fin. Assocs. v. Resolution Trust Corp.,* 33 F.3d 561, 563 (6th Cir.1994) ("Because the issue of exclusive federal jurisdiction is a matter of statutory interpretation, our review is *de novo.*").

---

**1.** The Secretary has promulgated rules of practice to govern formal agency adjudications initiated by the Secretary, and the cited regulation, 7 C.F.R. pt. 1, subpt. H, § 1.131, specifies statutory provisions to which these rules apply, including "sections 203, 312, 401, 502(b), and 505 of the [Packers and Stockyards] Act, and section 1, 57 Stat. 422, as amended by section 4, 90 Stat. 1249," or 7 U.S.C. §§ 193, 204, 213, 218a, 218d,

221. The government suggested that the district court may have confused the reference to § 203 of the Act with 7 U.S.C. § 203.

**2.** The government cited *United States v. Wehrheim,* 332 F.2d 469 (8th Cir.1964); *In re Van Meter,* 413 F.2d 536 (8th Cir.1969); and *United States v. Rauch,* 717 F.2d 448 (8th Cir.1983).

## B. Structure of the Packers and Stockyards Act

The Packers and Stockyards Act of 1921 was designed to secure the free and unburdened flow of livestock across the nation from producers to consumers by regulating the business of stockyards and their participants. *See Stafford v. Wallace*, 258 U.S. 495, 514, 42 S.Ct. 397, 401, 66 L.Ed. 735 (1922). Motivated in part by concern over exorbitant charges, duplicate commissions, and deceptive pricing practices, "all made possible by collusion between the stockyards management and the commission men, on the one hand, and the packers and dealers on the other," Congress established a pervasive regulatory scheme to be administered by the Secretary of Agriculture. *Id.* at 515, 42 S.Ct. at 401; *see* 7 U.S.C. § 228(a). In recognition of the Act's remedial nature, courts have construed its provisions liberally to effectuate its purposes. *Farrow v. United States Dep't of Agric.*, 760 F.2d 211, 214 (8th Cir.1985). One such purpose is "to assure fair competition and fair trade practices in livestock marketing and in the meatpacking industry." H.R.REP. No. 1048 (1957), *reprinted in* 1958 U.S.C.C.A.N. 5212, 5213.

Under the Act, a person who buys or sells livestock in commerce on his or her own account or for another person is a dealer, unless the person charges a commission, in which case he or she is a market agency. *See* 7 U.S.C. § 201(d) (defining a "dealer" as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser"); 7 U.S.C. § 201(c) (defining "market agency" as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services").

A person aspiring to carry on the business of a livestock dealer or market agency has certain obligations under the Act. Section 303 of the Act, in conjunction with applicable regulations, requires each person operating as a dealer or market agency at regulated or unregulated stockyards to register with the Secretary of Agriculture. 7 U.S.C. § 203; *see* 9 C.F.R. § 201.10(a) (requiring every person operating or desiring to operate as a dealer or market agency to apply for registration by filing a properly executed application for registration and furnishing a bond). Anyone who violates the registration provision "shall be liable to a penalty of not more than $500 for each such offense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil action brought by the United States." 7 U.S.C. § 203.[3] In accordance with U.S.D.A. regulations, dealers and market agencies must also post a reasonable bond to secure their financial obligations. 7 U.S.C. § 204; *see* 9 C.F.R. § 201.29(a), (b) (requiring every dealer or market agency to execute and maintain a reasonable bond; prohibiting any dealer or market agency from operating without having on file and in effect a bond in compliance with regulations).

Section § 312(a) of the Act makes it unlawful for any dealer or market agency "to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device" in connection with the basic functions of buying and selling livestock. 7 U.S.C. § 213(a). If the Secretary has reason to believe that any dealer or market agency is engaging in the proscribed behavior, after notice and a full hearing the Secretary may issue a cease and desist order and/or assess under statutorily-

---

**3.** In relevant part the statute provides:

[N]o person shall carry on the business of a market agency or dealer at [a posted] stockyard unless (1) the stockyard owner ... has given written authorization to such person, and (2) he has registered with the Secretary, under such rules and regulations as the Secretary may prescribe, his name and address, the character of business in which he is engaged, and the kinds of stockyards services, if any, which he furnishes at such stockyard. Every other person operating as a market agency or dealer [at non-posted facilities] as defined in section 201 of this title may be required to register in such manner as the Secretary may prescribe. Whoever violates the provisions of this section shall be liable to a penalty of not more than $500 for each such offense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil action brought by the United States.

7 U.S.C. § 203.

prescribed criteria a civil penalty of up to $10,000 for each violation. 7 U.S.C. § 213(b).

Under the Act's basic enforcement scheme, the Secretary may inquire independently into abuses of the Act relating to stockyard services, and make and enforce any order "except orders for the payment of money." 7 U.S.C. § 210(c). If, after appropriate process, the Secretary finds any registrant insolvent or in violation of any provisions of the Act, the Secretary may suspend the registrant for a reasonable specified period of time. 7 U.S.C. § 204. The Secretary's findings and orders are appealed directly to the courts of appeals. 28 U.S.C. § 2342(2). To enforce the Secretary's orders, the Secretary, an injured party, or the Attorney General may apply to the appropriate district court for injunctive or other proper relief. 7 U.S.C. § 216. Knowing failure to obey certain orders subjects the offender to a $500–per–offense forfeiture. 7 U.S.C. § 215.

Any dealer or market agency who violates the provisions of the Act or an order of the Secretary relating to the purchase, sale, or handling of livestock shall also be liable for the resultant injury. The injured person may file an administrative complaint with the Secretary or proceed directly by suit in district court to pursue any existing common law or statutory remedy. 7 U.S.C. § 209.

Under this framework the incentive to comply with the Act comes in large measure through monetary fines. Though the Secretary serves as the main tribunal for hearing and resolving complaints, the legislative scheme preserves an enforcement role for district courts, particularly where such fines are involved. Under this arrangement, the seeds are sown for tension as to each tribunal's exact turf; clarification of proper boundaries between courts and the agency is crucial.

## C. The Present Litigation

■ In the instant case, the government seeks to collect a penalty under § 303 of the Act from Haun, a purported livestock dealer operating without having registered, yet the district court cryptically proclaimed that the government's cause was "better handled administratively." J.A. at 16. As a preliminary matter, we pause to note that had the district court identified more particularly the legal basis for its action, the parties would have been better able to characterize what occurred below and argue its propriety before this court. As presented before us, the government claims that the district court plowed a new ground of abstention law; Haun asserts that the case is about requiring the government to exhaust administrative remedies. It is about neither.[4] Instead, we construe the district court's order as expressing a belief that the matter lay within the primary jurisdiction of the Secretary of Agriculture.

■ The doctrine of primary jurisdiction arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency. When the doctrine is applicable, court proceedings are stayed so as to give the parties reasonable opportunity to "refer" the matter to an agency by seeking an administrative ruling. *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993); *In re Long Distance Telecommunications Litigation*, 831 F.2d 627, 631 (6th Cir.1987); *see* JACOB A. STEIN ET AL., ADMINISTRATIVE LAW § 47.01 (5th ed. 1997) ("Primary jurisdiction is the deferral by a court of its power to hear a case, pending administrative determination of issues particularly within agency competence."). First announced in *Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the doctrine is designed to promote comity

---

4. As there is no suggestion that a simultaneous state court or administrative proceeding was brought against Haun, nor is an ambiguous or unsettled state law at issue, we see no basis for abstention. Cf. *Quackenbush v. Allstate Ins. Co.*, —— U.S. ——, ————, 116 S.Ct. 1712, 1720–21, 135 L.Ed.2d 1 (1996) (collecting recognized abstention cases). Exhaustion comes into play when an individual litigant has administrative remedies available that can be pursued before seeking relief from the federal courts. *See McCarthy v. Madigan*, 503 U.S. 140, 145–46, 112 S.Ct. 1081, 1086–87, 117 L.Ed.2d 291 (1992). Neither doctrine even remotely supports the district court's refusal to hear the present action.

between courts and administrative agencies. *See United States v. Western Pac. R.R.*, 352 U.S. 59, 63, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). Unlike exhaustion, which applies when a claim is cognizable in the first instance by an agency alone,

> "Primary jurisdiction," . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Id.* at 63–64, 77 S.Ct. at 165. No ready formula controls its application; courts instead look to whether the purposes of the doctrine, including uniformity and accuracy gained through administrative expertise, will be especially furthered by invocation in the particular litigation. *See id.* at 64, 77 S.Ct. at 165. If no administrative forum is available, however, a court should reassert or, as the case may be, retain its jurisdiction. STEIN, *supra* at § 47.03, p. 47–46.

To us, the statutory mandate at issue is entirely clear—a civil action in the appropriate district court is the exclusive means by which the Secretary can collect a monetary penalty against livestock dealers who operate without having registered in violation of § 303 of the Act (7 U.S.C. § 203). *See Colorado v. United States*, 219 F.2d 474, 476–77 (10th Cir.1954). The statute does not allow for the government to proceed administratively or in any other forum to recover the prescribed penalty; the sole method for recovery of § 303's penalty is "a civil action brought by the United States."[5] 7 U.S.C. § 203. Moreover, district courts plainly possess subject matter jurisdiction over such actions pursuant to 28 U.S.C. § 1345 (conferring original jurisdiction in district courts where the United States is the plaintiff) and 28 U.S.C. § 1355(a) (conferring original jurisdiction in district courts, exclusive of state

court jurisdiction, of actions to recover a penalty incurred under any Act of Congress).

Because the Act directs how the penalty must be recovered, the Secretary cannot proceed administratively to assess or collect the penalty under the Act's § 303. *See* 5 U.S.C. § 558(b). Had Congress seen fit to involve the Secretary in the imposition of such a penalty, it could easily have done so, as in § 203(b) or § 312(b) of the Act where the Secretary is specifically empowered to assess a civil penalty under given criteria. *See* 7 U.S.C. §§ 193(b), 213(b). Congress, however, explicitly channeled recovery of § 303's penalty to the courts, and we cannot therefore imply an alternative administrative avenue of redress. *See Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1458 (8th Cir.1995). The departure for § 303 from such other statutory arrangements may simply reflect that § 303 requires the initial registration of persons seeking to buy or sell livestock, whereas the other provisions generally regulate persons already registered and already subject to some level of agency supervision.

Because the civil penalty under § 303 of the Act is not recoverable in administrative proceedings, the Secretary of Agriculture cannot be said to have primary jurisdiction over the present matter. Having introduced the concept of primary jurisdiction to aid in understanding the district court's abrupt dismissal of this case, we now reject it as inappropriate here, where administrative referral is not feasible.

Referral to the Secretary would not serve any useful purpose in cases such as this. The district court is not likely to encounter issues of intricate fact or discretion demanding special administrative expertise, nor will the case upset the uniformity of an administrative program. Instead, all that the district court must decide is whether Haun fits within the statutory definition of a dealer, and, if so, whether he has registered—determinations the court, or a jury, is certainly competent to make. *See Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868, 874 (6th

---

5. Because the statute can support no other reading, we need not give separate weight to the Secretary's belief that the Department lacks the authority to proceed administratively to recover

a § 303 penalty. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Cir.1968) (doubting that administrative expertise is required to determine whether the plaintiff violated particular rules and regulations). The task of deciding whether someone falls within the purview of the Act's § 303 registration requirement is not foreign to federal courts. *See Colorado,* 219 F.2d at 477–78 (upholding the imposition of § 303 penalties against the State of Colorado because state inspection board failed to register as a market agency); *United States v. Rauch,* 717 F.2d 448, 450 (8th Cir.1983) (affirming district court's determination that Rauch was acting as a dealer in contravention of preexisting injunctions to not operate as a dealer without registering and obtaining a bond); *Solomon Valley Feedlot, Inc. v. Butz,* 557 F.2d 717 (10th Cir.1977) (concluding in declaratory judgment action that custom feedlots were not dealers or otherwise subject to the Act); *In re Van Meter,* 413 F.2d 536, 537 (8th Cir.1969) (finding substantial evidence to support district court's determination that Van Meter was operating as a dealer in contravention of injunction pertaining to registering and bonding).

In *United States v. Wehrheim,* 332 F.2d 469 (8th Cir.1964), Wehrheim and his codefendant completed an application for registration as a market agency but failed in numerous attempts to secure a bond. The government brought an action in district court under § 303 of the Act to recover a penalty for thirty-seven days that the defendants operated as a market agency without being fully registered and bonded, and to enjoin further unregistered operations. *Id.* at 471. Evidently without questioning its jurisdiction, the district court granted summary judgment to the defendants, finding that the failure to furnish a bond could not bar registration. The Eighth Circuit reversed, holding that proper registration under the regulations required that the application for registration be accompanied by the filing of a bond. *Id.* at 472–73 (citing 9 C.F.R. § 201.10(a)). Because they were not bonded during the period at issue, the *Wehrheim* defendants were deemed not validly registered and thus subject to § 303's penal-

ty. *Id.* at 473. At no point did the Eighth Circuit question the government's ability to seek the § 303 penalty in district court nor the lower court's authority to impose such a penalty.

Apart from § 303 of the Act, the Department of Agriculture routinely proceeds administratively against, for example, unregistered[6] individuals who are suspected of violating § 312(a) of the Act by committing unfair, unjustly discriminatory, or deceptive trade practices in the buying and selling of livestock, which includes failing to pay for purchased livestock. *See* 7 U.S.C. §§ 213(a), 228b. In these commonplace administrative proceedings, an administrative law judge, reviewed by the Judicial Officer of the Department, determines whether § 312(a) has been violated. *See* 7 U.S.C. §§ 450c–450f; 7 C.F.R. §§ 1.144, 1.145. If a violation is found, the offender may be required to cease and desist from such behavior, to pay a penalty under § 312(b), or to have his or her registration suspended. *See* 7 U.S.C. §§ 204, 213(b). Seemingly as a matter of course, the offender is also prohibited under § 303 of the Act from engaging in business subject to the Act without being registered with the Secretary. *See, e.g., In re Byrd,* 55 Agric. Dec. 443, 1996 WL 119670 (1996); *In re Tarver,* 55 Agric. Dec. 470, 1995 WL 877431 (1995); *In re Wade,* 47 Agric. Dec. 1133, 1988 WL 247621 (1988).

We do not doubt that the references to § 303 of the Act in these administrative decisions prompted the district court's pronouncement, albeit without a single citation, that the "vast majority" of § 303 cases appear in the Decisions of the United States Department of Agriculture. J.A. at 16. In each of the decisions we have surveyed, however, the Secretary charged, and the Judicial Officer found, a violation of one of the provisions of the Act for which the Secretary may initiate formal agency adjudications, *see* 7 C.F.R. pt. 1, subpt. H, § 1.131, often 7 U.S.C. §§ 213(a) or 221 (regarding record-keeping practices). No case was brought

---

**6.** Notably, § 312(b) of the Act does not restrict the Secretary to proceed only against "registrants," but rather enables the Secretary to act against "any stockyard owner, market agency, or dealer" that the Secretary believes is engaging in the proscribed behavior. 7 U.S.C. § 213(b).

strictly under § 303 of the Act; rather, the § 303 injunctive component in these cases was entered as part of the redress of the charged substantive violation. Unlike imposing a civil penalty under § 303, prohibiting livestock operations without a valid registration does not exceed the Secretary's authority—when a dealer or market agency is found in violation of the Act, the Secretary can make and enforce any order "except orders for the payment of money." 7 U.S.C. § 210(c). In no instance that we have examined did the Secretary assess, or attempt to assess, a civil penalty under § 303 of the Act,[7] and rightly so, for the statute precludes administrative assessment of such civil monetary penalties. Were this court to say that the Secretary is powerless to resort to district court to recover a penalty under § 303, the government protests that it would be put out to pasture, unable to take any meaningful action against unregistered livestock dealers unless and until they committed an unfair or deceptive trade practice or another substantive violation of the Act.

For over seventy years the livestock industry has remained a highly-regulated segment of our society and thus a prime setting for fulfillment of the purposes behind the doctrine of primary jurisdiction. *See McCleneghan v. Union Stock Yards Co. of Omaha,* 298 F.2d 659, 665–67 (8th Cir.1962) (Blackmun, J.) (tracking development of the primary jurisdiction doctrine and concluding that the doctrine may be invoked in certain antitrust litigation involving the Packers and Stockyards Act but does not inevitably bar the court's exercise of jurisdiction); *Crain v. Blue Grass Stockyards Co.,* 399 F.2d 868 (6th Cir.1968) (remanding primary jurisdiction issue for record development where registered dealer claimed that the defendants conspired to exclude him from their stockyards in violation of the Sherman Act, the Clayton Act, and the Packers and Stockyards Act, 7 U.S.C. §§ 205, 208, and 209). We continue to adhere to the belief expressed in *Crain*

that in most instances where rates, rules, or practices are attacked as unreasonable or discriminatory, or where the facts call for the deciding tribunal to exercise a degree of expertise or discretion, courts should stay their hand to allow the appropriate administrative agency an opportunity for initial determination. *See id.* at 872; *Detroit, Toledo and Ironton R.R. v. Consolidated Rail Corp.,* 727 F.2d 1391, 1396 (6th Cir.1984). The case at bar, however, implicates none of these concerns; preliminary resort to the agency is therefore not only infeasible but also unnecessary.

Because the government's request for a monetary penalty from an unregistered livestock dealer under § 303 of the Act cannot proceed administratively, the district court's rationale for declining jurisdiction is not valid. We see no legal basis for the district court to have dismissed the action when it did. Absent a compelling and legitimate reason to the contrary, federal courts have a " 'virtually unflagging obligation' to exercise the jurisdiction given them." *McCarthy v. Madigan,* 503 U.S. 140, 146, 112 S.Ct. 1081, 1087, 117 L.Ed.2d 291 (1992) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). As federal judges, " '[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' " *Id.* (quoting *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821)). An action to recover a civil penalty under § 303 of the Act is to be brought directly to, and decided by, the appropriate district court; the court should need no further prodding to "accept" jurisdiction. A federal court may not abdicate its adjudicative duty simply because an action sounds an administrative tone.

## III. CONCLUSION

The district court should have retained jurisdiction over the government's attempt to

---

7. Cases do arise where the Secretary assessed a civil penalty under § 312(b) of the Act. For unfair, unjustly discriminatory, or deceptive trade practices, the Secretary is specifically authorized to "assess a civil penalty of not more than $10,-000 for each such violation" under statutorily-prescribed criteria. 7 U.S.C. § 213(b). *See, e.g.,*

*In re Goetzinger,* 51 Agric. Dec. 1399, 1992 WL 515810 (1992) (assessing penalty under § 312(b) of Act for willful violations of 7 U.S.C. §§ 213(a), 228b); *In re Britton Bros.,* 49 Agric. Dec. 423, 1990 WL 320315 (1990) (assessing penalty under § 312(b) of Act for willful violations of 7 U.S.C. §§ 208, 213(a), 221).

recover a civil penalty under § 303 of the Packers and Stockyards Act (7 U.S.C. § 203) from a livestock dealer allegedly operating without being registered. We therefore **RE-VERSE** the district court's order dismissing the action and **REMAND** the case to the district court for further proceedings in accordance with this opinion.