404 F.2d 1055
 The DENVER UNION STOCKYARD CO., the Denver Livestock Market, Inc., and Western Stock Center, Inc., Appellants,
v.
The DENVER LIVE STOCK COMMISSION CO., a Colorado corporation, Appellee.
 No. 10123.
 United States Court of Appeals Tenth Circuit.
 December 23, 1968.
 
 Winston S. Howard, Denver, Colo. (Dawson, Nagel, Sherman & Howard, Hugh A. Burns and George A. Sissel, Denver, Colo., were with him on the brief), for appellants.
 Maurice Reuler, Denver, Colo. (Mason, Reuler & Peek and Jon L. Lawritson, Denver, Colo., were with him on the brief), for appellee.
 Before JONES*, BREITENSTEIN and HOLLOWAY, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The issue is whether the doctrine of primary jurisdiction requires the stay of a private antitrust action relating to the industry regulated by the Packers and Stockyards Act, 7 U.S.C. § 181 et seq.
 
 
 2
 The complaint as amended charges violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and of § 7 of the Clayton Act, 15 U.S.C. § 18. The trial court denied a motion to dismiss for lack of jurisdiction and certified the question for an interlocutory appeal which we denied because of a late filing. The defendants answered and moved for a stay on the ground that the action raises questions of fact and law which should first be determined by the Secretary of Agriculture under the doctrine of primary jurisdiction. The trial court denied the stay and we granted an appeal from that interlocutory order.
 
 
 3
 The doctrine of primary jurisdiction is founded on the need to resolve the procedural and substantive conflicts which arise when the authority of an administrative agency over a regulated industry impinges on the jurisdiction of the courts. In the antitrust field, it represents a method of accommodating the principle of free competition with the principle that in some economic areas regulation, restriction, or elimination of competition is required in the public interest. There is no fixed formula for the application of the doctrine.[1] The Supreme Court has upheld the invocation of the doctrine in cases arising under the Interstate Commerce Act,[2] and the Shipping Act,[3] and the Federal Aviation Acts.[4] The Court declined to apply the doctrine in United States v. Radio Corporation of America, 358 U.S. 334, 350, 79 S.Ct. 457, 3 L.Ed.2d 354, saying that the justification for primary jurisdiction disappears when there is no pervasive regulatory scheme, and no rate structures, which will be thrown out of balance by court action. In California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54, the Court held that the Federal Power Commission should have stayed its hand in approving the acquisition of one natural gas company by another when an antitrust suit challenging the validity of the transaction was pending in federal court. The Court said[5] that its function "is to see that the policy entrusted to the courts is not frustrated by an administrative agency." The doctrine applies where "the determination demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal or where court action will possibly interfere with or impair the coherence and uniformity of an intricate administrative program."[6]
 
 
 4
 We turn from these generalities to the case before us. We are concerned with the issues made by the pleadings. The amended complaint alleges that the plaintiff is, and for a long time has been, in business as a commission merchant engaged in sales of livestock through private treaty and auction.[7] Some of the livestock moves in interstate commerce. The defendant Yard Company has owned and operated the premises on which the business of the plaintiff, in large measure, has been conducted for many years. In 1959, the Yard Company acquired a corporation, John Clay & Company later known as The Denver Livestock Market, Inc., and as Western Stock Center, Inc., which was a commission house competing with the plaintiff. The plaintiff received livestock at the premises of the Yard Company and sold such stock primarily through private treaty. In so doing it used the pens, scales, and other facilities of the Yard Company and paid the various charges therefor. After the acquisition of John Clay & Co., the Yard Company increased the use of auction sales which previously had been held only once a year at the time of the Stock Show. On auction days all cattle had to be sold through the auction ring. On July 1, 1966, the Yard Company terminated all tenancies, required all sales to be by auction, and permitted no commission merchants, other than its subsidiaries, to sell at the yards.
 
 
 5
 We do not read the complaint as charging a contract, combination, or conspiracy violative of § 1 of the Sherman Act, 15 U.S.C. § 1. Rather it charges a violation of § 2, 15 U.S.C. § 2, by the creation, or attempted creation, of a monopoly. The allegations in this regard are that the Yard Company placed its subsidiaries in a favored position through the shifting of pen assignments, the use of weigh scales, and the institution of auction sales; that the change to auction sales from private treaty sales enabled the defendants to control and dominate the sale of livestock through the yards; that the acquisition of commission houses by the Yard Company enabled it to stifle competition; and that the July 1, 1966, action terminating the tenancy of the plaintiff and denying the right of the plaintiff and other nonsubsidiary commission merchants to operate at the yards destroyed much of the plaintiff's business. The claim under § 7 of the Clayton Act, 15 U.S.C. § 18, is that the acquisition of other corporations and the creation of subsidiaries has "substantially lessened competition in a section of the country in the business of buying and selling livestock."
 
 
 6
 The answer of the defendants denies most of the pertinent allegations of the amended complaint and specifically denies that John Clay & Co. was acquired by any of the named defendants. It admits that "at some point in time auctions began to be held more frequently than once a year." As an affirmative defense, the defendants say that the activities complained of are within the regulatory authority of the Secretary and, hence, the action should be dismissed.
 
 
 7
 The Packers and Stockyards Act was passed in 1921 to regulate the interstate livestock business.[8] The Secretary of Agriculture determines and posts the stockyards subject to the Act. 7 U.S.C. § 202. Stockyard dealers and market agencies must be registered with the Secretary. 7 U.S.C. § 203. Both stockyard owners and market agencies must provide reasonable stockyard services without discrimination. 7 U.S.C. § 205. Rates must be reasonable, nondiscriminatory and filed with the Secretary. 7 U.S.C. §§ 206 and 207. Unreasonable or discriminatory practices are forbidden. 7 U.S.C. § 208. Individuals may collect damages for violations of the Act by complaint to the Secretary or by suit in a United States district court. 7 U.S.C. § 209. Proceedings before the Secretary and the enforcement of his orders are governed by 7 U.S.C. §§ 210-217. Judicial review of such orders may be had under 28 U.S.C. § 2342 with certain exceptions.
 
 
 8
 The Yard Company is a stockyard owner by determination of the Secretary and has been posted as such.[9] The plaintiff is a market agency within the scope of the Act.
 
 
 9
 In Crain v. Blue Grass Stockyards Company, 6 Cir., 399 F.2d 868, the court held that a complaint charging violations of the Sherman Act and of the Packers and Stockyards Act should not be dismissed because of the doctrine of primary jurisdiction and said, Id. at 874, that the plaintiff should not be deprived of resort to the courts "unless it clearly appears that the controversy is one that properly should be referred to the Secretary for determination." There, the plaintiff claimed that he was excluded from the defendant's stockyards without just and reasonable cause. In its answer the defendant admitted the exclusion and averred that it resulted from the violation of reasonable rules and regulations. No similar justification for exclusion appears in the case at bar. Here, the charge is that the Yard Company has monopolized the business in Denver.
 
 
 10
 The defendants assert correctly that pen assignments, use of weigh scales, and auction sales are practices, the control of which has been relegated to the Secretary. They say that this is enough to require the invocation of the doctrine of primary jurisdiction under the decision in McCleneghan v. Union Stock Yards Co. of Omaha, 8 Cir., 298 F.2d 659. In that case the complaint charged Sherman Act violations in the use of the flip system and in the cancellation of pen assignments. The court discussed primary jurisdiction at length and concluded it may be properly invoked in antitrust litigation involving the Packers and Stockyards Act but it "is not an inevitable barrier to court jurisdiction in all such cases."[10] The court said that the flip system had been found to be discriminatory by the Secretary; that there was "no need for further administrative expertise on this issue"; that the problem of uniformity was not present; and that the justification for primary jurisdiction has disappeared. On the matter of pen assignments the court held that the doctrine of primary jurisdiction applied because the determination of its propriety depended, in the first instance, on whether it was a discriminatory practice which denied to the plaintiff "reasonable stockyard services" as required by 7 U.S.C. § 205.
 
 
 11
 The instant case differs from McCleneghan. We are concerned with a charge of monopolization under § 2 of the Sherman Act and of corporate acquisitions which lessened competition in violation of § 7 of the Clayton Act. There was no charge of a § 7 violation in McCleneghan. We must determine whether the doctrine of primary jurisdiction requires the stay of the issues presented by the pleadings before us.
 
 
 12
 California v. FPC[11] and Pan American World Airways v. United States[12] were decided after McCleneghan. The problem of the reconciliation of these decisions has been the subject of comment.[13] As we read these decisions, the distinguishing factor lies in the pervasiveness of the regulatory statute. California v. FPC, which came first, was concerned with the Natural Gas Act which forbids the acquisition of a natural gas facility without FPC approval. The Court said that, as in United States v. R.C.A., 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354, "there is `no pervasive scheme' * * * including the antitrust laws that has been entrusted to the Commission."[14] In Pan American World Airways the Court found a pervasive scheme[15] and mentioned the immunization provision of the act then before it.[16]
 
 
 13
 Nothing in the Packers and Stockyards Act immunizes or exempts those subject to its provisions from antitrust actions. To the contrary, it provides[17] that nothing contained therein shall "prevent or interfere with the enforcement of, or the procedure under," the Sherman Act and the Clayton Act. The Secretary is given no power over acquisitions and mergers. Those regulated may abandon their activities without agency approval. In our opinion, the Act is not of the pervasive character which, when found in other acts, has resulted in the invocation of the primary jurisdiction doctrine. The determination of whether the charged antitrust violations have occurred does not require administrative expertise and court action will not impair or interfere with the coherence or uniformity of an intricate administrative program.
 
 
 14
 We believe that the pleadings present antitrust issues which call for judicial action. We repeat that the only matter before us is the question of a stay and that our decision is based on the pleadings before us. We decide nothing except that the proceedings should not be stayed.
 
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 United States v. Western Pacific Railroad Co., 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126
 
 
 [2]
 Terminal Warehouse Co. v. Pennsylvania Railroad Co., 297 U.S. 500, 513-515, 56 S.Ct. 546, 80 L.Ed. 827
 
 
 [3]
 United States Navigation Co., Inc. v. Cunard Steamship Co., Ltd., 284 U.S. 474, 482, 52 S.Ct. 247, 76 L.Ed. 408, and Far East Conference v. United States, 342 U.S. 570, 574-576, 72 S.Ct. 492, 96 L.Ed. 576
 
 
 [4]
 Pan American World Airways, Inc. v. United States, 371 U.S. 296, 312, 83 S.Ct. 476, 9 L.Ed.2d 325
 
 
 [5]
 369 U.S. 482, 490, 82 S.Ct. 901, 906, 8 L.Ed.2d 54
 
 
 [6]
 World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 349 F.2d 1007, 1010-1011. See also Texas and Pacific Railway Company v. Abilene Cotton Oil Company, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Great Northern Railway Company v. Merchants' Elevator Company, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943; and Far East Conference v. United States, 342 U.S. 570, 574, 575, 72 S.Ct. 492, 96 L.Ed. 576
 
 
 [7]
 Under the treaty method, the stockyard function is primarily to furnish the facilities, feed, and care for the producers' livestock pending negotiations for sale. Under the auction method, livestock is consigned to the stockyard company for the purpose of sale, and prospective buyers bid at a regular public auction sale on the stock offered. Schmidt v. Old Union Stockyards Company, 58 Wash.2d 478, 364 P.2d 23, 24
 
 
 [8]
 A description of the objectives of the Act and of the business regulated appears in Stafford v. Wallace, 258 U.S. 495, 514-516, 42 S.Ct. 397, 66 L.Ed. 735
 
 
 [9]
 See 7 U.S.C. § 202
 
 
 [10]
 298 F.2d 659 at 667
 
 
 [11]
 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed. 2d 54
 
 
 [12]
 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325
 
 
 [13]
 See 3 Davis Admin.Law 1965 PP. § 19.06, p. 15, and Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037, 1067-1070
 
 
 [14]
 369 U.S. 482, 485, 82 S.Ct. 901, 904, 8 L.Ed.2d 54
 
 
 [15]
 371 U.S. 296, 305, 83 S.Ct. 476, 9 L.Ed. 2d 325
 
 
 [16]
 49 U.S.C. § 1384
 
 
 [17]
 7 U.S.C. § 225