**LITVAK MEAT COMPANY, a Colorado corporation, Plaintiff,**

v.

**The DENVER UNION STOCK YARD COMPANY, a Colorado corporation, Defendant.**

**Civ. A. C–1060.**

United States District Court
D. Colorado.

May 26, 1969.

See also D.C., 295 F.Supp. 809.

Feder, Morris & Kortz, by Harold A. Feder, Denver, Colo., for plaintiff.

Dawson, Nagel, Sherman & Howard, by Winston S. Howard, Raymond J. Turner and George A. Sissel, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. By previous order ruling on the motion was reserved pending defendant's answer and the answer has now been filed. Defendant grounds the motion on the doctrine of primary jurisdiction, contending that plaintiff's claims must first be submitted to the Secretary of Agriculture who is given regulatory powers over stockyards by the Packers and Stockyards Act, 7 U.S.C. §§ 181 et seq.

Plaintiff invokes the jurisdiction of this Court on the basis of the federal stockyards act and the general federal

question statute.[1] Under 7 U.S.C. § 209 damage suits may be brought in the federal district courts for violations of certain sections of the stockyards act. Among the provisions enumerated are 7 U.S.C. §§ 206 and 208, on which the complaint purports to be primarily based. Inasmuch as the action is asserted to be one arising under the federal stockyards act and the amount in controversy exceeds $10,000, reliance is also placed on 28 U.S.C. § 1331. The complaint reveals a lack of diversity of citizenship, both parties being Colorado corporations.

In substance, plaintiff alleges that defendant is subject to the provisions of the stockyards act and has violated 7 U.S.C. § 206 prohibiting unjust, unreasonable or discriminatory rates or charges for stockyard services and 7 U.S.C. § 208 prohibiting unjust, unreasonable or discriminatory regulations and practices regarding the provision of stockyard services. The complaint asserts that these provisions have been and are being violated by a contractual situation which exists between the parties. Additionally, relief is sought, in apparent reliance on state law, on the basis of lack of or illegality of consideration, unjust enrichment, economic duress and contract interpretation.

The core of plaintiff's complaint is a January 1, 1960 contract (exhibit B to the complaint) executed by it and defendant which provides that until December 31, 1969 or until defendant ceases doing business as a public stockyard, plaintiff will pay to defendant a sum equal to fifty per cent of the regular scheduled yardage charges on all livestock which plaintiff acquires and on all livestock slaughtered or processed on plaintiff's premises as constituted within the vicinity of defendant's yards. Livestock purchased at the yard on which the seller has paid yardage are excepted and a reduced sum is due on up to 3,000 head per year which come to plaintiff's plant from being fed by plaintiff at a feedlot.

This agreement was executed to replace one of January 29, 1957 (exhibit A to the complaint) under which defendant promised to have built at its expense a railroad spur track for plaintiff's non-exclusive use and plaintiff agreed to pay a $1.00 per year rent and a sum equal to the regular scheduled yardage charges on all livestock acquired by it or slaughtered or processed on its premises, excepting livestock purchased by plaintiff at the yard on which yardage had already been paid. Defendant was to have the track built and pay the expenses of construction and rights of way (estimated to be $70,000), maintain the track at its expense and pay all taxes on the tracks and rights of way. Plaintiff asserts that this agreement was made as a result of economic duress.

It is also alleged that in conjunction with the 1960 agreement, plaintiff leased (exhibit C to the complaint) certain cattle pens to defendant for ten years for $1,000 to be paid in annual installments of $100 and that defendant simultaneously licensed (exhibit D to the complaint) these same pens back to plaintiff on identical terms. Defendant has initiated state court proceedings to, among other things, retake possession of these pens. While the spur track cost approximately $70,000, it is averred that payments of over $375,000 have been made under the contracts with no stockyard services having been provided in return. It is further alleged that other area packers entered into contracts with defendant similar to the 1960 agreement and, in support of allegations of discrimination, that as to one other packer a new contract has been made (exhibit E to the complaint) abating the payment of yardage charges under the prior contract in return for a lump sum payment.

1. Since declaratory relief is sought, plaintiff also asserts 28 U.S.C. § 2201. However, it is well established that the section does not provide a truly independent basis for federal court jurisdiction of cases as distinguished from enlargement of the remedies available. *See, e. g.,* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

In view of this alleged situation, plaintiff seeks the following relief: 1) a declaration that defendant is no longer operating as a public stockyard within the meaning of 7 U.S.C. § 202 or the 1960 contract;[2] 2) a declaration that the 1960 contract, lease and license are void; 3) an order abating payment of future yardage charges under the contract; 4) money damages for violations of the stockyards act; and 5) a money judgment for the amount of yardage charges paid under the contracts over the cost of the spur track.

■ Against this, defendant has presently invoked the doctrine of primary jurisdiction. Under this well established principle, preliminary resort to an administrative officer or agency may be required when a court action raises matters within the authority of that officer or agency. *See generally* 3 K. Davis, Administrative Law Treatise §§ 19.01–19.09 (1958); Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964).

The presently relevant officer is the Secretary of Agriculture, some of whose powers and duties regarding stockyards are as follows: The Secretary is to determine which stockyards come within the purview of the act and post them as such. 7 U.S.C. § 202. He is given various powers and duties regarding market agencies and dealers operating at such stockyards. 7 U.S.C. §§ 203–205. Rates and charges for stockyard services and rules or regulations affecting them are to be filed with the Secretary and he, either upon complaint or his own initiative, may hear and determine their legality. 7 U.S.C. § 207. Damage liability for violation of certain sections of the act, including sections 206 and 208, or regulations of the Secretary may be enforced by complaint to the Secretary in accordance with the provisions of 7 U.S.C. § 210. 7 U.S.C. § 209. Further, the Secretary may investigate and determine such violations on his own motion.

7 U.S.C. § 210. Whether inquiry be initiated by complaint or by the Secretary himself, if any rate, charge, regulation or practice for or in conjunction with the provision of stockyard services is found to be unjust, unreasonable or discriminatory, he may determine what will be the just, reasonable, and nondiscriminatory rate, charge, regulation or practice and order that the violation not be continued and that the rate, charge, regulation or practice established by him be adhered to. 7 U.S.C. § 211. The Secretary is to prescribe rates and practices where necessary to prevent discrimination between intrastate and interstate commerce. 7 U.S.C. § 212. Finally, he is empowered to prevent unfair, discriminatory or deceptive practices. 7 U.S.C. § 213. The regulations of the Secretary issued under these and other sections of the Packers and Stockyards Act are found in 9 C.F.R. §§ 201 et seq. (1968).

■ We have no doubt that the doctrine of primary jurisdiction is generally applicable in actions under the Packers and Stockyards Act. It appears that in every reported decision to consider the question, the conclusion has been in favor of the doctrine even though 7 U.S.C. § 209(b) provides for complaint to the Secretary *or* suit in the federal district courts. Kelly v. Union Stockyards & Transit Co., 190 F.2d 860 (7th Cir. 1951) (attack on removal from open order list); Sullivan v. Union Stockyards Co., 26 F.2d 60 (8th Cir. 1928) (attack on rates and charges); Shannon v. Chambers, 212 F.Supp. 620 (S.D.Ind.1962) (attack on practices regarding furnishing of stockyard services); United States v. Castner, 116 F.Supp. 475, 479 (N.D.Ill.1953) (doctrine generally applicable but not in criminal cases); Schmidt v. Old Union Stockyards Co., 58 Wash.2d 478, 364 P.2d 23 (1961) (attack on change in method of sale). While application of the doctrine was refused in an action against a stockyard

---

**2.** The complaint contains allegations regarding change in the nature of defendant's business. It states that the use of commission salesmen and sale by private treaty have been abandoned and that now defendant operates an auction market for the sale of livestock.

based solely on the antitrust laws, Denver Union Stockyard Co. v. Denver Live Stock Commission Co., 404 F.2d 1055 (10th Cir. 1968), it has been found relevant in suits founded on both the antitrust laws and the stockyards act. Crain v. Blue Grass Stockyards Co., 399 F.2d 868 (6th Cir. 1968); McCleneghan v. Union Stock Yards Co., 298 F.2d 659 (8th Cir. 1962).

In view of Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), we accord with the position that the doctrine of primary jurisdiction is potentially applicable in suits under the stockyards act despite the wording of 7 U.S.C. § 209(b). Notwithstanding statutory provisions which, like section 209(b), provided that damage recovery could be by complaint to the ICC or suit in federal district court and that existing common law and statutory remedies were not altered or abridged, the Court in *Abilene* held that a reparations suit based on unreasonableness of a rate could not be entertained absent preliminary resort to the administrative agency.[3]

█ Though the doctrine of primary jurisdiction is thus potentially applicable in suits under the stockyards act, each case must be examined to determine whether the doctrine should be applied. It must be determined whether the preclusion of court jurisdiction in the particular case will serve the purposes of the doctrine. *See, e. g.,* Crain v. Blue Grass Stockyards Co., *supra;* McCleneghan v. Union Stock Yards Co., *supra;* Kelly v. Union Stockyards & Transit Co., *supra.*

> "Primary jurisdiction" * * * applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special

competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. United States v. Western Pac. R.R., 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (citation omitted).

In *Abilene*, the reason for the doctrine was the need for uniformity. However,

> [m]ore recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. The two factors are part of the same principle,

> "now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained

---

**3.** It should be noted that section 209(b) came into law in 1921 along with the rest of the Packers and Stockyards Act, well after the 1907 *Abilene* decision pronouncing the doctrine of primary jurisdiction in a strikingly similar statutory context.

through experience, and by more flexible procedure." *Id.*, at 574–575, 72 S.Ct. at 494.

The doctrine of primary jurisdiction thus does "more than prescribe the mere procedural time table of the lawsuit. It is a doctrine allocating the law-making power over certain aspects" of commercial relations. "It transfers from court to agency the power to determine" some of the incidents of such relations. United States v. Western Pac. R. R., *supra*, at 64–65, 77 S.Ct., at 165 (footnote omitted).

■ Applying these considerations to the case at hand, we conclude, on the basis of the complaint, that matters within the primary jurisdiction of the Secretary of Agriculture are presented.

The federal substantive provisions upon which the action purports to be based are 7 U.S.C. §§ 202, 206 and 208. It should initially be noted that section 202 does not here provide a basis for application of the doctrine. That section simply defines the term "stockyard" and states that the Secretary of Agriculture is to determine which stockyards come within the purview of the act and post them as such. While it is evident that determining which stockyards are within the act is a function of the Secretary, deferral to his jurisdiction on the basis of this section would be inappropriate since section 202 appears only tangentially relevant insofar as one of plaintiff's theories is that the 1960 contract has, by its terms, terminated because defendant allegedly no longer operates as a "stockyard" within the meaning of the statute or contract. This aspect of plaintiff's claim seeks contract interpretation, a matter beyond the Secretary's authority, and section 202 becomes relevant only when, and if, it is determined

that the 1960 contract adopts the statutory definition. Furthermore, the foundation of this claim would appear to lie in state rather than federal law.

However, the essence of the complaint is the claim that the alleged contractual situation violates 7 U.S.C. §§ 206 and 208. Section 206 states that

All rates or charges made for any stockyard services furnished at a stockyard by a stockyard owner or market agency shall be just, reasonable, and nondiscriminatory, and any unjust, unreasonable, or discriminatory rate or charge is prohibited and declared to be unlawful.

Section 208 provides in pertinent part that

It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful.

The involvement of these sections compels application of the doctrine of primary jurisdiction.

No decision, of a court or the Secretary, has been found passing on the question whether a contractual arrangement under which sums geared to yardage charges are required to be paid by packers on livestock which apparently do not pass through the yard so as to partake of its services is within the purview of sections 206 and 208.[4] Insofar as these sections require that the dispute be about a rate, charge, regulation or practice, there seems to be no problem requiring administrative determination. Plaintiff complains of "charges" made, albeit un-

---

4. Our research has disclosed only one decision touching in any way on such a situation. In Capitol Packing Co. v. United States, 350 F.2d 67, 80 (10th Cir. 1965), the court reversed a decision of the Secretary holding a packer's practice of charging sellers with a yardage charge it was obligated to pay the stockyards under contract though no services were in fact performed at the yard to be unfair in violation of 7 U.S.C. § 192(a). In reversing, the court found no evidence of deception or prejudice and held, as a matter of law, that the practice did not violate the section.

der contract, for which no services are rendered. While the contractual situation complained of obviously does not have the status of a "regulation", it does come within the meaning of the term "practice". The situation is not an isolated, single occurrence; it has existed for a number of years and, according to the complaint, pertains to other area packers as well.[5] The fact that plaintiff complains of charges being made while no services are rendered and further does not allege that any services are in fact desired in no way removes the claim from coverage under the act or the potential jurisdiction of the Secretary. To exact charges for no sufficient reason may violate the act as much as would refusing requested services or imposing unreasonable rates or practices regarding services provided.

However, there are two critical points embodied in plaintiff's claim under the federal stockyards act which do require application of the doctrine of primary jurisdiction. While the uniformity consideration does not appear particularly compelling here, application of the principle is dictated by the need for fulfillment of the congressional design regarding the role of the Secretary in regulation of the industry and proper utilization of administrative expertise. The first point requiring application of administrative expertise is one common to most cases under sections 206 and 208, i. e., whether the alleged situation is unjust, unreasonable or discriminatory. The second, and more basic, point is the relationship, if any, between the complained of situation and stockyard services.

■ Both section 206 and section 208 are concerned only with matters related to stockyard services. Though regulation of the industry under the act is extensive, it does not encompass all dealings with or by stockyards. Section 206 applies to "rates or charges made for any stockyard services * * *."

The duty imposed by section 208 is "to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services." * * * It is clearly only such unjust, unreasonable, or discriminatory regulation or practice "in respect to the furnishing of stockyard services" which is prohibited and declared to be unlawful. McClure v. E. A. Blackshere Co., 231 F.Supp. 678, 681 (D.Md.1964).

By 7 U.S.C. § 201(b), "stockyard services" are defined to be

services or facilities furnished at a stockyard in connection with the receiving, buying, or selling on a commission basis or otherwise, marketing, feeding, watering, holding, delivery, shipment, weighing, or handling in commerce, of livestock.

If the matter in dispute is not concerned with or related to stockyard services, it is beyond the purview of the act and, furthermore, the Secretary has no power regarding it.[6]

Taking this second point first, we find that the purposes of primary jurisdiction will be served by requiring that the Secretary initially determine the relationship of the complained of situation to stockyard services. His familiarity with the intricacies of the industry and the possible reasons for and ramifications of such arrangements places him in a much superior position to make such an evaluation. As stated

---

5. Decisions interpreting the term "practice" as used in the stockyards act have emphasized the elements of uniformity and continuity. Guenther v. Morehead, 272 F.Supp. 721, 726–728 (S.D.Iowa 1967) (interpreting 7 U.S.C. § 213); McClure v. E. A. Blackshere Co., 231 F.Supp. 678, 682 (D.Md.1964) (interpreting 7 U.S.C. § 208).

6. Defendant's answer indicates that this is one of the principal issues in the dispute, one of defendant's positions being that the alleged situation has nothing to do with stockyard services.

in McCleneghan v. Union Stock Yards Co., 298 F.2d 659, 670 (8th Cir. 1962),

> Questions involving *the reach of the statutory words* "discrimination" and "*stockyard services*", and the merit of a defense raised against a charge of discrimination, *are matters for the Secretary's expertise and are properly assessed by him in the first instance.* (Emphasis added.)

Though made regarding circumstances far different from those presented by the complaint here, the following statement from Southwestern Sugar & Molasses Co. v. River Terminals Corp., 360 U.S. 411, 421, 79 S.Ct. 1210, 1217, 3 L.Ed.2d 1334 (1959), is apposite:

> "Cases are not decided, nor the law appropriately understood, apart from an informed and particularized insight into the factual circumstances of the controversy under litigation." Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 498, 78 S.Ct. 851, 861, 2 L.Ed.2d 926. This principle has particular force when the courts are asked to strike down on grounds of public policy a contractual arrangement on its face consensual.

Moreover, the act, as previously detailed, gives the Secretary extensive powers regarding stockyards and their rates and practices.

A reading of the provisions of the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq., its legislative history, and the interpretative decisions under it, indicates clearly that Congress has conferred upon the Secretary of Agriculture plenary power to supervise and regulate the business of a public stockyard and its market agencies, including all the material incidents and relationships of its marketing processes. Sioux City Stock Yards Co. v. United States, 49 F. Supp. 801, 804 (N.D.Iowa 1943) (citations omitted).

The Secretary is given plenary power, upon full hearing, to examine all the activities of a public stockyard market and all the necessary or established relationships involved in its functioning, and to prohibit by appropriate cease and desist order any unjust, unreasonable or discriminatory practice in connection therewith. *Id.* at 806.

For the Court to pass on the question absent a prior administrative determination would be disruptive of the statutory scheme and would prevent the Secretary's informed judgment from ever coming to bear. Coordination of the judicial and administrative roles requires that primary jurisdiction be applied.

We reach this conclusion despite uncertainty about whether the complained of situation has anything whatever to do with stockyard services, directly or indirectly. The complaint is particularly inexplicit in detailing a connection with stockyard services.[7] And, accordingly, dismissal for failure to state a claim upon which relief can be granted in that regard might seem appropriate.[8]

---

7. Other than conclusory statements that the imposition of such charges without services being provided in return is an illegal rate or practice, the only relevant allegations of the complaint are that plaintiff understood it would not be able to get a spur track without coming to terms with defendant on the problem of yardage charges and that contracts similar to the 1960 agreement were entered into by other area packers as a result of disputes regarding yardage charges. It is also possible that the spur track itself or the leased and licensed pens bear some relation to stockyard services. The fact that payment under the contracts is geared to yardage charges and quantity of livestock may also imply a relationship.

8. This problem of relationship to stockyard services has considerably troubled the Court in the course of disposing of the present motion. We first encountered the problem in the course of analyzing the existence of federal jurisdiction. However, our conclusion was that plaintiff's federal claim was clearly not so insubstantial as to warrant dismissal for lack of federal jurisdiction under the principle of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Despite this uncertainty, primary jurisdiction remains appropriate since the Secretary, by virtue of his expert knowledge, can better evaluate the situation in terms of such relationship. While in one sense it might be said that the Secretary has no jurisdiction unless stockyard services are involved, administrative officers and agencies, as well as courts, have jurisdiction to determine, at least initially, their own jurisdiction. The purposes of the doctrine are particularly well served when the administrator is first allowed to determine the coverage of the statute he is charged with administering. J. M. Huber Corp. v. Denman, 367 F.2d 104, 111–112 (5th Cir. 1966). Though our conclusion might be different were it obvious from the face of the complaint that stockyard services are in no way involved or related, such is not the case here.

■ The other point raised by the complaint which is within the province of the Secretary is whether the alleged situation is unjust, unreasonable or discriminatory. For the same reasons as previously discussed, the doctrine of primary jurisdiction must be applied to allow the Secretary to make this determination. Questions of reasonableness, at least when there is no prior decision on a similar question or the matter is not unreasonable on its face, are for the Secretary. Crain v. Blue Grass Stockyards Co., 399 F.2d 868, 874 (6th Cir. 1968); see McCleneghan v. Union Stock Yards Co., 298 F.2d 659 (8th Cir. 1962); cf. Mitchell Coal & Coke Co. v. Pennsylvania R. R., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472 (1913).

Before closing our discussion of the applicability of primary jurisdiction to the case, we treat plaintiff's contention, advanced in a supplemental brief, that Denver Union Stockyard Co. v. Denver Live Stock Commission Co., 404 F.2d 1055 (10th Cir. 1968), requires rejection of the doctrine here. As previously noted, that case held primary jurisdiction inapplicable to compel the stay of an action based solely on the antitrust laws. As we read it, the key to the decision is the pervasiveness of the administrator's powers in relation to the particular matter in dispute. The court there was concerned with charges of lessening of competition by corporate acquisitions and monopolization—matters clearly beyond the Secretary's authority. Here we are concerned simply with rates and practices, and the Secretary's powers regarding rates and practices can only be described as "pervasive". While in the antitrust case violations of the stockyards act over which the Secretary has jurisdiction might be pertinent, here they are the foundation of the lawsuit.

■ Since primary jurisdiction is applicable, this Court cannot proceed to hear the case inasmuch as no prior resort to the administrative process appears to have been made. The remaining question is whether dismissal or stay is the appropriate course. We conclude in favor of the former because the Secretary, by virtue of his power to award damages as well as declare rates and practices invalid, may be able to grant full and complete relief should plaintiff prevail. See Shannon v. Chambers, 212 F.Supp. 620, 622 (S.D.Ind.1962). It is likely that further resort to this Court will be unnecessary. Furthermore, the administrative jurisdiction here comprehends the core of the suit (i. e., whether sections 206 or 208 apply and have been violated) rather than merely incidental questions and any decision is subject to judicial review or enforcement through the appropriate procedures. See Far East Conference v. United States, 342 U.S. 570, 577, 72 S.Ct. 492, 96 L.Ed. 576 (1952). No good purpose would be served by holding the action in abeyance rather than dismissing.

■ Admittedly, the Secretary has no jurisdiction over many of the claims raised by the complaint, but this fact does not compel a stay for two reasons. The first is that the Secretary,

in passing on the federal stockyards act claim, may be able to grant largely all the relief comprehended in these theories should he decide in favor of plaintiff. Secondly, these other claims concern lack of or illegality of consideration, unjust enrichment, economic duress and contract interpretation and are not founded upon federal law. They must find their basis in state law and, there being no diversity of citizenship, we have no jurisdiction over them absent utilization of pendent jurisdiction. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). While there might be a question whether a dismissal under primary jurisdiction by removal of the base federal claim absolutely precludes invocation of pendent jurisdiction to hear related state claims, we conclude that even if there is no such absolute effect pendent jurisdiction should not be applied in these circumstances. Application of pendent jurisdiction is discretionary and "if the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well." United Mine Workers v. Gibbs, *supra*, at 726, 86 S.Ct., at 1139. The justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants * * *." *Id.*, 86 S.Ct., at 1139. None of these purposes would be served by asserting jurisdiction over the state law claims and holding the action in abeyance when the base federal claim may never return to this Court.

It is therefore

Ordered that defendant's motion to dismiss be and hereby is granted. Insofar as the complaint is based on the federal stockyards act, it is dismissed under the doctrine of primary jurisdiction, and insofar as the complaint is founded on state law, it is dismissed for want of federal jurisdiction.