PUBLIC SERVICE COMPANY OF COL-
ORADO, a Colorado corporation,
Plaintiff–Appellant,

v.

MILE HI CABLE PARTNERS L.P., a Col-
orado limited partnership; Mountain
States Video, Inc., d/b/a TCI of Colorado,
Inc., a Colorado corporation; United Ca-
ble Television of Colorado, Inc., d/b/a
TCI of Colorado, Inc., a Colorado corpo-
ration; TCI Cablevision of Colorado,
Inc., a Colorado corporation; Heritage
Cablevision of Tennessee, Inc., a Tennes-
see corporation; and TCI Cablevision of
Florida, Inc., a Florida corporation, De-
fendants–Appellees.

No. 98CA1666.

Colorado Court of Appeals,
Div. III.

Dec. 23, 1999.

Elzi & Gurr, Kathryn A. Elzi, Denver, Colorado; New Century Energies, Inc., Lisa A. Lett, Denver, Colorado, for Plaintiff–Appellant.

Williams, Youle & Koenigs, P.C., Robert E. Youle, Brian G. Eberle, Denver, Colorado; Cole, Raywid & Braverman, L.L.P., T. Scott

Thompson, Wesley R. Heppler, Washington, D.C., for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiff, Public Service Company (PSCo), appeals the order dismissing its breach of contract claims brought against Mile Hi Cable Partners, L.P., a Colorado limited partnership; Mountain States Video, Inc. d/b/a TCI of Colorado, Inc., a Colorado corporation; United Cable Television of Colorado, Inc. d/b/a TCI of Colorado, Inc., a Colorado corporation; TCI Cablevision of Colorado, Inc., a Colorado corporation; Heritage Cablevision of Tennessee, Inc., a Tennessee corporation; and TCI Cablevision of Florida, Inc., a Florida corporation (collectively TCI). We affirm the trial court's ruling deferring jurisdiction to the Federal Communications Commission (FCC) but reverse the order dismissing the action and remand for further proceedings.

PSCo is, among other things, a large electric utility with an extensive electrical distribution infrastructure, including power poles, serving many municipalities in Colorado. TCI, a television cable operator serving many communities in Colorado, entered into a pole attachment agreement (agreement) with PSCo for the use of its power poles. The contract required TCI first to obtain permission to attach cable to a particular pole or group of poles, established a price for authorized installations, and provided for a penalty of $250 per pole for each unauthorized installation.

PSCo conducted an audit of its power poles and discovered what it alleges is a large number of unauthorized attachments by TCI. PSCo billed TCI $301,250 in penalties for unauthorized attachments in several predominantly rural counties in Colorado.

PSCo commenced these proceedings to collect the penalties and for a declaration of its rights to terminate the contract. TCI moved to dismiss the complaint, or in the alternative to stay the proceeding, on the grounds that the FCC had primary jurisdiction to determine whether the rates, terms, and conditions of PSCo's pole attachment agreements were reasonable under the Federal Pole Attachment Act, 47 U.S.C. § 224 (1991)(the

Act). The trial court granted the motion and dismissed the action. In a separate action, TCI had filed a complaint with the FCC alleging that the penalty provisions for unauthorized attachments violated the Act.

PSCo contends the trial court erred in deferring to the jurisdiction of the FCC. We disagree.

The Act authorizes the FCC to regulate rates charged by utilities to cable television companies for access to the utilities' poles, ducts, conduits, and rights-of-way. The Act was amended in 1996 to mandate nondiscriminatory access to cable television systems and telecommunications carriers. The FCC was granted the authority to determine a "just and reasonable" rate of compensation for those utility companies providing such access. 47 U.S.C. § 224; *see also Pole Attachment Act Not Unconstitutional, 11th Cir. Decides*, 3 No. 2; Andrews Telecommunications Industry Litigation Reporter 10, (October 1999).

The Act provides, in pertinent part, as follows:

(b) Authority of Commission to regulate rates, terms, and conditions; enforcement powers; promulgation of regulations

(1) Subject to the provisions of subsection (c) of this section, *the Commission shall regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable,* and shall adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions. For purposes of enforcing any determinations resulting from complaint procedures established pursuant to this subsection, the Commission shall take such action as it deems appropriate and necessary, including issuing cease and desist orders, as authorized by section 312(b) of this title.

47 U.S.C. § 224 (1999)(emphasis added).

47 U.S.C. § 224(1)(c) provides that the FCC shall, if the state regulates pole access, defer to state regulation. Colorado does not regulate pole access. The Act permits any cable company operating in a state which does not regulate the rates, terms, and condi-

tions of pole attachments to seek relief before the Commission from alleged overcharging. *See* 47 U.S.C. § 224(b)(1). Prior to the trial court's ruling, the FCC issued an order finding that it had primary jurisdiction over this matter.

█ The doctrine of primary jurisdiction is founded on the need to resolve procedural and substantive conflicts which arise when the authority of an administrative agency over a regulated industry impinges on the jurisdiction of courts. *Denver Union Stockyard Co. v. Denver Live Stock Commission Co.*, 404 F.2d 1055 (10th Cir.1968), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1631, 23 L.Ed.2d 40 (1969). The doctrine is applied when a claim is originally cognizable in courts and comes into play whenever enforcement of a claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *see also Good Fund, Ltd. v. Church*, 540 F.Supp. 519, (D.Colo.1982), *rev'd on other grounds*, 703 F.2d 464 (10th Cir.1983).

█ In cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. *Sierra Club v. Morton*, 379 F.Supp. 1254 (D.Colo.1974).

█ No fixed formula exists for deciding when to invoke the doctrine of primary jurisdiction. *United States v. Western Pacific Railroad Co.*, *supra*. However, courts should utilize the doctrine reluctantly when its application is inappropriate due to the nature of the action. *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684 (Colo.App.1982).

█ Further, when an agency is interpreting its own regulation, the courts have given added deference to the agency's construction, and a court must uphold an agency's interpretation of its own regulation unless that interpretation is plainly erroneous or creates an inconsistent standard. *Jones v. Federal Deposit Insurance Corp.*, 748 F.2d 1400 (10th Cir.1984).

Both PSCo and TCI have cited a FCC case, *Alert Cable TV of North Carolina, Inc. v. Carolina Power & Light Co.*, 1985 LEXIS 3679 File No. PA—82—0012 (released March 25, 1985), which we find persuasive. There, Alert Cable (Alert) sought reconsideration of a previous order issued by the FCC, alleging that the FCC had failed to declare penalty charges for unauthorized pole attachments unlawful under the Act. Carolina Power and Light challenged the FCC's jurisdiction to determine penalty charges. The FCC declined to declare the penalty rates unlawful, but stated "jurisdiction [under section 224] is not limited to the regular annual rental charge for pole attachments but includes all terms or conditions for pole attachments by cable television operators." *Alert Cable TV of North Carolina, Inc. v. Carolina Power & Light Co.*, *supra*, 1985 FCC LEXIS 3679 at *5.

█ PSCo claims that the FCC does not have primary jurisdiction because the Pole Attachment Act does not address penalties for *unauthorized* pole attachments. PSCo, in our view, reads the Act too narrowly. The Act, by is express terms, grants to the FCC the authority to regulate the rates, terms, and conditions for pole attachments. Penalties for unauthorized attachments contained in an agreement are certainly within the scope of the terms and conditions for attaching cables to poles.

█ Here, to determine the extent of PSCo's contractual claims, it is first necessary for the FCC to resolve whether the penalty is reasonable. As evidenced by the FCC's order of July 14, 1998, the FCC's construction of the Act and its decision to exercise jurisdiction in this instance are well-reasoned and not plainly erroneous. The regulation of pole attachment agreements is appropriately addressed by the special competence of the FCC, and therefore, the district court did not err in deferring to the FCC.

However, the trial court is the appropriate forum for the adjudication of PSCo's contract claims following a final determination by the FCC. Therefore, in our view, dismissal of the action was inappropriate.

The trial court's ruling deferring jurisdiction to the FCC is affirmed, and the matter is remanded to the district court with orders to reinstate PSCo's complaint and to enter an order staying the proceedings until the proceedings pending before the FCC are completed.

Judge PLANK and Judge CASEBOLT concur.